UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------X
JOHN J. DONACHIE,

                Plaintiff,

             -against-

LIBERTY LIFE ASSURANCE COMPANY
OF BOSTON, LIBERTY MUTUAL INSURANCE
COMPANY and LIBERTY MUTUAL HOLDING
COMPANY, INC.,

                Defendants.
------------------------------------------------------------X

**OPINION & ORDER**
**CV-04-2857 (SJF)(ARL)**

FEUERSTEIN, J.

On July 8, 2004, plaintiff John J. Donachie (plaintiff) filed a complaint against defendants Liberty Life Assurance Company of Boston, Liberty Mutual Insurance Company and Liberty Mutual Holding Company, Inc. (collectively, defendants) under section 1132(a)(1)(B) of the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. §§ 101, *et seq.*, seeking judicial review of defendants' denial of his claim for long-term disability benefits. Pending before the Court is defendants' motion pursuant to Rule 26(c) of the Federal Rules of Civil Procedure for a protective order precluding or limiting the depositions of certain persons. For the reasons set forth herein, defendants' motion is granted to the extent set forth herein, and the motion is otherwise denied.

I.      Background

A. Factual Background[1]

1. Plaintiff's Alleged Disability

Plaintiff is a forty-six year old man who has been employed by FleetBoston Financial Corporation (FFC) and/or its predecessor-in-interest for approximately fourteen (14) years. (Complaint [Compl.], ¶¶ 9, 13). Plaintiff currently is a Senior Vice President and works out of the home office of FFC in New York, New York, although his job duties require him to travel extensively throughout the city and the United States and abroad. (Compl., ¶¶ 9, 12).

On December 27, 2001, plaintiff had an ascending aortic aneurysm repaired and his aortic valve replaced with a prosthetic aortic valve at St. Francis Hospital in Roslyn, New York. (Compl., ¶ 13). Plaintiff was discharged from the hospital on January 4, 2002, but returned twice during that month. (Id.). According to plaintiff, he experienced, and continues to experience, side effects of the surgery, including constant valve compressions with each beat of his heart, shortness of breath, and an inability to sleep through the night without the aid of medication. (Compl., ¶ 14).

Plaintiff returned to work part-time at FFC in late February 2002. (Compl., ¶ 15). According to plaintiff, he was working approximately forty (40) hours a week by the middle of 2002, but "was still unable to perform the material and substantial duties of his occupation on an active employment basis." (Id.). Plaintiff alleges that in the fall of 2002, he attempted to return to FFC on a full time basis and to resume all of the duties of his previous employment but was forced to take time off to recuperate after business-related travel. (Compl., ¶¶ 16-17).

---

[1] The following facts are taken from the complaint and do not constitute findings of fact by the Court.

In February 2003, plaintiff commenced treatment with a "Master Social Worker," to whom he was referred by his cardiologist. (Compl., ¶¶ 19-20). In or about April 2003, plaintiff commenced treatment on a monthly basis with a psychiatrist, to whom he was referred by the Master Social Worker. (Compl., ¶ 21).

According to plaintiff, by June 2003, as a result of his aortic surgery, he was "mentally and physically unable to cope with the stresses and tensions associated with the material and substantial duties of his occupation." (Compl., ¶ 22). Plaintiff alleges that following a physical examination on June 19, 2003, his cardiologist advised him to take time off from work and to reassess his options, since continuing in his present employment position would risk further injury to his physical and mental health. (Compl., ¶ 23).

### 2. The Short-Term Disability (STD) Plan

As an employee of FFC, plaintiff was provided with short-term disability (STD) coverage under a self-funded STD Plan managed by defendant Liberty Mutual Insurance Company (Liberty), as the STD Plan administrator. (Compl., ¶¶ 24-25). According to plaintiff, the STD Plan benefits commenced on the eighth consecutive day a participant is absent from work following medical certification that the participant is unable to work due to an illness or injury and approval by Liberty, as plan administrator. (Compl., ¶¶ 27-29). Benefits under the STD Plan were payable for a maximum period of twenty-five (25) weeks. (Compl., ¶ 37). By letter dated July 24, 2003, Liberty approved plaintiff's claim for benefits under the STD Plan through August 1, 2003. (Compl., ¶ 31).

According to plaintiff, Tim Wright (Wright) collected additional records relating to

3

plaintiff's claim for benefits under the STD Plan between August 1, 2003 and October 24, 2003. (Compl., ¶ 34). By letters dated August 12, 2003, September 12, 2003, and October 24, 2003, all signed by Wright, plaintiff's benefits under the STD Plan were extended to November 21, 2003. (Compl., ¶ 32-33, 35).

On or about November 10, 2003, an independent medical examination (IME) was performed by Dr. George Brief (Brief) at defendants' request. (Compl., ¶¶ 38, 41). In addition, defendants arranged for a "consulting physician medical record review" by Dr. Andrew O. Brown (Brown). (Id.).

By letter dated December 4, 2003, also signed by Wright, plaintiff was advised that his benefits under the STD Plan would expire on December 17, 2003, upon the expiration of the twenty-five week maximum payment period for benefits under the STD Plan, and that he might be eligible for benefits under FFC's long-term disability (LTD) Plan. (Compl. ¶¶ 36-37, 53).

### 3. The LTD Plan

Plaintiff's LTD Plan through FCC was issued by Liberty. (Compl., ¶ 48).

By letter dated December 22, 2003, signed by Wright, plaintiff was advised that he was not entitled to receive benefits under the LTD Plan because he did not meet the LTD Plan's definition of "disability." (Compl., ¶ 54). On February 17, 2004, Liberty denied plaintiff's request for reconsideration. (Compl., ¶ 55).

## B. Procedural Background

On July 8, 2004, plaintiff commenced this action against defendants under section

4

1132(a)(1)(B) of ERISA, seeking a declaratory judgment that plaintiff is "disabled" under the provisions of the LTD Plan; an order directing defendants to make all past and future disability payments due and owing under the LTD Plan and to refund all premiums paid by plaintiff for coverage under the LTD Plan, with interest; damages for plaintiff's loss of accrual of service time towards his pension plan; and attorneys' fees.

Defendants move pursuant to Rule 26(c) of the Federal Rules of Civil Procedure for a protective order precluding or limiting the depositions of Wright, Brief and Brown.

II.  DISCUSSION

Rule 26(c) of the Federal Rules of Civil Procedure provides, in relevant part, as follows:

> "Upon motion by a party * * * and for good cause shown, the court in which the action is pending * * * may make any order which justice requires to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense, including one or more of the following: (1) that the disclosure or discovery not be had; * * * [and] (4) that certain matters not be inquired into, or that the scope of the disclosure or discovery be limited to certain matters; * * *."

Defendants contend that the depositions of Wright, Brief and Brown are inappropriate because federal court review in ERISA cases is generally limited to the administrative record. Defendants further contend, *inter alia*, that if the depositions are permitted, they should be limited in scope to the issue of whether Liberty was in fact influenced by its dual capacity as insurer and claims administrator.

A.  Appropriateness of Discovery

In support of their argument that federal court review in this case is limited to the

5

administrative record, defendants assert that this Court should review plaintiff's claim under an "arbitrary and capricious" standard rather than a *de novo* standard. However, it is unnecessary at this juncture to resolve the standard of review issue because under either standard, there is no absolute bar to additional discovery outside the administrative record. See Mitchell v. First Reliance Standard Life Ins. Co., 237 F.R.D. 50, 53 (S.D.N.Y. 2006) (holding that the court need not resolve which standard of review is applicable because even if the Court ultimately decided the case under the arbitrary and capricious standard, there is no absolute bar to discovery); see also Orndorf v. Paul Revere Life Ins. Co., 404 F.3d 510, 519 (1st Cir. 2005) (holding that the issue of whether evidence outside the administrative record is admissible turns on the nature of the challenge to the decision, not on whether the standard of judicial review is *de novo* or arbitrary and capricious).

While review under either standard is generally limited to the administrative record, extrinsic evidence has been deemed relevant in certain circumstances, e.g. on the issues of whether the decision to deny coverage was tinged by a conflict of interest, corruption or a lack of good faith or whether an administrator conducted a genuine evaluation of the record, and on other issues relating to the procedures used for adjudication by the plan administrator. See Mitchell, 237 F.R.D. at 53-54 (citing cases); see also Zervos v. Verizon New York, Inc., 252 F.3d 163, 174 (2d Cir. 2001) (stating that the court is not confined to the administrative record on the issue of whether the decision to deny coverage was tinged by a conflict of interest even under the arbitrary and capricious standard); DeFelice v. American International Life Assurance Co. of New York, 112 F.3d 61, 66-67 (2d Cir. 1997) (holding that upon *de novo* review, a district court may, upon good cause shown, exercise its discretion to admit evidence outside the administrative

record if the administrator was not disinterested); Liston v. UNUM Corp. Officer Severance Plan, 330 F.3d 19, 23 (1st Cir. 2003) (stating that although the ordinary rule is that review for arbitrariness is on the administrative record, certain kinds of claims, such as proof of corruption, may take a reviewing court to materials outside the administrative record)[2]; Orndorf, 404 F.3d at 520 (holding that extrinsic evidence may be appropriate upon *de novo* review where the challenge is not to the merits of the decision to deny benefits, but to the procedure used to reach the decision, i.e. when the attack is on the process of decision making as being contrary to the statute rather than on the substance of the administrator's decision). A plaintiff must establish "good cause" for the consideration of such extrinsic evidence upon review of his or her claim. See DeFelice, 112 F.3d at 66; Muller v. First Unum Life Ins. Co., 341 F.3d 119, 125 (2d Cir. 2003) (holding that the presumption is that judicial review is limited to the administrative record unless the court finds good cause to consider additional evidence); see also Liston, 330 F.3d at 23 (holding that at least some very good reason is needed to overcome the strong presumption that the record on review is limited to the administrative record); Brown v. Seitz Foods, Inc. Disability Benefit Plan, 140 F.3d 1198, 1200 (8th Cir. 1998) (holding that a district court may admit additional evidence in an ERISA benefit-denial case if the plaintiff shows good cause for the court to do so).

Plaintiff contends, *inter alia*, that the depositions are relevant to the determination of whether Liberty operated under a conflict of interest when it denied his claim for LTD benefits. According to plaintiff, a conflict of interest is evidenced not only by Liberty's dual status as both

---

[2] Liston was cited with approval by the Second Circuit in a summary order. Wagner v. First Unum Life Ins. Co., 100 Fed.Appx. 862, 864 n. 1 (2d Cir. Jun. 14, 2004).

underwriter and plan administrator, but also (1) by Liberty's "inconsistent" determinations, including its approval of his claim for STD benefits when Liberty was not the payor and subsequent denial of his claim for LTD benefits when Liberty's own money was at risk; (2) by the fact that his claim and appeal of the denial of his claim were decided by an employee or committee composed entirely of employees of Liberty; (3) by the fact that the Plan's procedures for the consideration of a claim or appeal of the denial of a claim are insufficient; and (4) by the fact that the committee apparently did not retain all of the records they considered in determining plaintiff's claim. Plaintiff notes that without a deposition of Wright, there is no testimony from a Liberty employee in this matter and, more significantly, that there has been no evidence disclosed by Liberty of procedures for reviewing claims. (Plaintiff's Memorandum of Law in Opposition [Plf. Mem.], p. 19).

Defendants do not dispute that Liberty acted in a dual capacity as both plan insurer and administrator. Defendants contend, however, that plaintiff has failed to provide the requisite "good cause" to conduct the depositions.

"[A] conflict of interest does not *per se* constitute 'good cause' to consider evidence outside of the administrative record * * *." Locher v. UNUM Life Ins. Co. of America, 389 F.3d 288, 294 (2d Cir. 2004); see also Graham v. First Reliance Standard Life Ins. Co., No. 04 Civ. 9797, 2006 WL 3408548, at * 1 (S.D.N.Y. Nov. 22, 2006) (holding that in order for a plaintiff to demonstrate good cause, he must do more than point to the fact that the defendant may be faced with conflicting incentives when making eligibility decisions). "Good cause" has been found to exist, *inter alia*, where the procedures employed by the claims administrator were flawed or where there were insufficient procedures for initial or appellate review of a claim, see, e.g.

8

DeFelice, 112 F.3d at 66; and where an insurer's claims reason for denying a claim was not stated in its notices to the claimant, see, e.g. Juliano v. Health Maintenance Organization of New Jersey, Inc., 221 F.3d 279, 289 (2d Cir. 2000).

Plaintiff correctly notes that cases such as Locher, DeFelice and Juliano arose in the context of dispositive motions or trials and did not involve discovery disputes. The issue here is not, as in those cases, whether I may *consider* evidence outside of the administrative record, but whether plaintiff is entitled to discovery of such evidence so that he may have the opportunity to raise a conflict of interest argument upon review and urge the consideration of such extrinsic evidence by the Court.

Based upon the foregoing, I find that plaintiff is entitled to discovery regarding the issues (1) of Liberty's conflict of interest; and (2) whether Brief and Brown, as the Liberty medical consultants denying plaintiff's claim, had a conflict of interest which influenced their reports. See, e.g. Allison v. Unum Life Ins. Co., No. CV 04-0025, 2005 WL 1457636, at * 13 (E.D.N.Y. Feb. 11, 2005) (finding that the plaintiff was entitled to discovery, including a deposition of the medical consultant used by the defendant in denying the plaintiff's claim, about whether the defendant and/or the medical consultant had a conflict of interest when the claim was determined, and whether that conflict influenced the determination). Accordingly, the branch of defendants' motion which seeks a protective order preventing the depositions of Wright, Brief and Brown is denied.

B. Limitation of Discovery

Although plaintiff is entitled to depose Wright, Brief and Brown, any evidence thereby

uncovered would be relevant only to the limited issue of conflict. Therefore, the branch of defendants' motion which seeks to limit the scope of those depositions is granted. Accordingly, (1) the depositions of Brief and Brown are limited to the issues of whether they were operating under a conflict of interest and whether any such conflict of interest affected their reports; and (2) the deposition of Wright is limited to the issue of whether Liberty was in fact influenced by the conflict of interest inherent in its status as both insurer and plan administrator, as well as on issues relating to the procedures Liberty used in determining the plaintiff's claim. See, e.g. Allison, 2005 WL 1457636, at * 13 (permitting the limited depositions of (1) witnesses from First Unum regarding the issues of whether First Unum was in fact influenced by the inherent conflict of interest and relating to the procedures used by First Unum in determining the plaintiff's claim and (2) First Unum's medical consultant on the issues of whether he operated under a conflict of interest and whether a conflict affected his decision); see also Samedy v. First UNUM Life Ins. Co. of America, No. 05-CV-1431, 2006 WL 624889, at * 2 (E.D.N.Y. Mar. 10, 2006) (permitting the limited deposition of one of the defendant's employees for the narrow purpose of determining whether the defendant's consideration of the plaintiff's application presented a conflict of interest and whether that conflict influenced the defendant's decision). Plaintiff is advised that although his request for additional discovery is granted, as limited above, it is only to provide him with the opportunity of showing that good cause exists for consideration beyond the administrative record when I review his claims. See, e.g. Allison, 2005 WL 1457636, at * 13; Anderson v. Sotheby's Inc. Severance Plan, May 20, 2005, N.Y.L.J. 20 (col. 1). The appropriate standard of review will be determined upon my review of his claims.

C.  Telephonic Depositions

Defendants request that in the event depositions are permitted, the depositions of Wright, who works in Liberty's office in Weston, Massachusetts, and of Brown, whose offices are in Dover, New Hampshire, be performed telephonically with pre-marked exhibits, or, in the alternative, that plaintiff be ordered to pay the expenses of the attendance of Liberty's attorneys at such depositions out-of-state pursuant to Local Civil Rule 30.1. Plaintiff does not address this request, other than to perfunctorily state in his conclusion that the Court should order that the depositions be taken in New York City.

Local Civil Rule 30.3 provides that "[t]he motion of a party to take the deposition of an adverse party by telephone will presumptively be granted." Accordingly, this branch of defendants' motion is granted to the extent that the depositions of Wright and Brown shall be conducted telephonically with pre-marked exhibits.

III.  CONCLUSION

For the reasons set forth herein, defendants' motion for a protective order is granted to the extent that the depositions of Wright, Brief and Brown will be limited as set forth herein and the depositions of Wright and Brown will be conducted telephonically with pre-marked exhibits, and the motion is otherwise denied. The parties are directed to conduct the depositions within **forty-five days (45) days** from the date of this Order. The parties are directed to appear in my courtroom at 1010 Federal Plaza, Central Islip, New York on **Wednesday, July 25, 2007 at 10:00 a.m.** for a settlement and/or scheduling conference with authority or persons with authority

to resolve this action. Further, the parties are directed to engage in good faith settlement negotiations prior to the conference.

SO ORDERED

_____
SANDRA J. FEUERSTEIN
United States District Judge

Dated: May 29 2007
       Central Islip, New York


Copies to:

Michael F. Mongelli, II P.C.
41-07 162nd Street
Flushing, New York 11358

Carlet, Garrison, Klein & Zaretsky, LLP
645 Fifth Avenue, Suite 703
New York, New York 10022